**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PAMELA M. H.,

                                    Plaintiff,

              v.                                                              No. 5:23-CV-00197
                                                                                   (AMN/CFH)
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                             HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration                KATHRYN S. POLLACK, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Pamela M. H.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for supplemental security income benefits.  See

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  See Dkt. No. 14.  The Commissioner moves for judgment on the pleadings and for the Commissioner's decision to be affirmed.  See Dkt. No. 21.  Plaintiff filed a reply.  See Dkt. No. 22.  For the following reasons, it is recommended that the Commissioner's decision be affirmed.

## I. Background

On April 24, 2017, plaintiff filed an application for Title XVI supplemental security income benefits.  See T. at 161-69, 969.[3]  Plaintiff alleged a disability onset date of October 1, 2003.  See id. at 77-78.  The Social Security Administration ("SSA") denied plaintiff's claim on August 1, 2017.  See id. at 92-96.  Plaintiff appealed and requested a hearing, see id. at 98-101, and a hearing was held before Administrative Law Judge ("ALJ") Jennifer Gale Smith on January 31, 2019.  See id. at 30-57.  On February 22, 2019, the ALJ issued an unfavorable decision.  See id. at 10-20.  Plaintiff timely filed a request for review by the Appeals Council.  See id. at 158-59.  On January 17, 2020, the Appeals Council denied plaintiff's request for review.  See id. at 1-6.  Plaintiff timely commenced an action before this Court.  See id. at 1089-90.  In a Memorandum-Decision and Order dated September 22, 2021, United States District Judge Norman A. Mordue reversed the Commissioner's decision and remanded for further proceedings.[4]  See id. at 1096-1109.  On November 3, 2021, the Appeals Council vacated the ALJ's

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  See Dkt. No. 9.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

[4] Judge Mordue directed the ALJ to "cite substantial evidence in the step five determination" and "determine whether there are jobs that exist in significant numbers that [p]laintiff can perform."  T. at 1109.

decision and remanded the case for further proceedings consistent with Judge
Mordue's order.  See id. at 1112-15.  The ALJ held a second hearing on December 1,
2022.  See id. at 1033-63.  On December 14, 2022, the ALJ issued an unfavorable
decision.  See id. at 966-82.  Plaintiff bypassed written exceptions, and the Appeals
Council did not assume jurisdiction within sixty days, making the ALJ's determination
the final decision of the Commissioner.  See id. at 966-68; see also Dkt. No. 14 at 5; 20
C.F.R. § 416.1484(c), (d).  Plaintiff timely commenced this action on February 13, 2023.
See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not
determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),
1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.
1990).  Rather, the Commissioner's determination will only be reversed if the correct
legal standards were not applied, or it was not supported by substantial evidence.  See
Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d
464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning
that in the record one can find "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d
Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal
citations omitted)).  The substantial evidence standard is "a very deferential standard of
review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a

reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff "ha[d] not engaged in substantial gainful activity since April 24, 2017, the

application date."  T. at 972.  At step two, the ALJ found that plaintiff

> ha[d] the following severe impairments: degenerative changes of the
> spine, right knee patellar tendinitis, sesamoid bone removal, hammer toe
> correction, right toe fractures, bunion removal, fibromyalgia, headaches,
> asthma, obesity, a depressive disorder, bipolar disorder, an anxiety
> disorder, panic disorder with agoraphobia, a personality disorder, PTSD
> and a substance use disorder.

Id.  At step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 973-75.

Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a) except she
> should not work at unprotected heights or work in close proximity to
> dangerous machinery or moving mechanical parts of equipment. [Plaintiff]
> should not climb ladders/ropes/scaffolds, balance (as defined in the
> [Selected Characteristics of Occupations ("SCO")]), kneel, crouch or crawl.
> She can occasionally climb ramps/stairs and stoop to 75 degrees.  She
> can frequently push, pull, reach, handle, finger and feel.  [Plaintiff] should
> have no more than occasional concentrated exposure to respiratory
> irritants such as dust, odors, fumes, gases, wetness, humidity and
> extreme hot and cold temperatures. [Plaintiff] can tolerate no more than
> moderate levels of noise, as defined in Appendix D of the [SCO], 1993
> Edition.  She should avoid work outdoors in bright sunshine and work with
> bright or flickering lights such as one would experience welding or cutting
> metals.  She can understand, remember and carry out simple instructions.
> She can use judgment to make simple, work-related decisions.  [Plaintiff]

should work at a job with no more than occasional changes in the routine work setting.  She cannot perform work requiring a specific production rate such as an assembly line, and she cannot perform work that requires hourly quotas.  [Plaintiff] can have occasional contact with coworkers and supervisors but no contact with the public.

Id. at 975-76.  At step four, the ALJ determined that plaintiff did not have any past relevant work.  See id. at 980.  At step five, considering plaintiff's RFC, age, education, and work experience, along with the vocational expert ("VE") testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform[,]" including "Printed Circuit Board Screener"[5] and "Final Assembler."[6]  Id. at 980-81.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since April 24, 2017, the date the application was filed[.]"  Id. at 982.

## IV. Discussion

### A. The Parties' Arguments[7]

Plaintiff contends that the ALJ failed to meet her step five burden of proving that there exists a significant number of jobs in the national economy that plaintiff can perform.  See Dkt. No. 14 at 3, 7-8.  Plaintiff notes that the ALJ determined that plaintiff could perform the jobs of "Printed Circuit Board Screener" and "Final Assembler," and that the ALJ "adopted the VE's testimony that there would be 14,000 printed circuit board screener jobs and 13,000 final assembler jobs available in the national economy."

---

[5] "Printed Circuit Board Screener (DOT # 726.684-110).  This is a sedentary exertion job with an SVP of two.  There are 13,000 of these jobs in the national economy."  T. at 981.
[6] "Final Assembler (DOT # 713.687-018).  This is a sedentary exertion job with an SVP of two.  There are 14,000 of these jobs in the national economy."  T. at 981.
[7] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

Id. at 9.  Plaintiff argues, however, that the VE's testimony is "unreliable," because "[w]hen cross-examined by [p]laintiff's counsel, the VE did not offer any source for translating the information in the Bureau of Labor Statistics to actual numbers of jobs from the [Dictionary of Occupational Titles (the 'DOT')] which fit the hypothetical."  Id.; see Dkt. No. 22 at 1-4.  Plaintiff claims that "Bureau of Labor Statistics ('BLS') publications do not quantify number of jobs," and the VE "declined to identify the source he consulted to translate the raw BLS information for determining incidence figures." Dkt. No. 22 at 2-3.  Plaintiff further argues "that the numbers of jobs offered by the vocational expert are inaccurate," which "raises a significant doubt as to the reliability of the foundation for the ALJ's determination at Step 5."  Dkt. No. 14 at 9-10.  Plaintiff asserts that,

> [i]n contrast to the numbers provided by the VE during the hearing, SkillTran's Job Browser Pro, indicates that—in 2022 when the hearing was held—for "Touch-Up Screener, Printed Circuit Board Assembly" (DOT # 726.684-110), there were only 1,076 jobs in the national economy [and f]or "Final Assembler" (DOT # 713.687-018), . . . there were only 26 jobs in the national economy.

Id. at 9.  Thus, plaintiff contends that "the ALJ relied on jobs which do not exist in significant numbers in the national economy[,]" and "[r]elief is warranted on this basis." Id. at 11-12.

The Commissioner argues that the ALJ's "decision is supported by substantial evidence, and should be affirmed."  Dkt. No. 21 at 9.  The Commissioner asserts that, because plaintiff failed to object to the VE's testimony during the hearing, she waived any challenges and "failed to preserve this issue for appeal."  Id. at 9-10.  The Commissioner further contends that "the ALJ properly relied on the [VE]'s testimony"

because it "had numerous 'indicia of reliability.'" Id. at 10-11 (citing Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019)).

**B. Analysis**

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform[,]" and an "ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citations omitted); see Spellman v. Comm'r of Soc. Sec., No. 2:21-CV-05842 (SIL), 2023 WL 5350845, at *12 (E.D.N.Y. Aug. 21, 2023) ("Work which exists in the national economy means potential jobs that exist in significant numbers either in the region where such individual lives or in several regions of the country.") (citing 42 U.S.C. § 423(d)(2)(A)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' and accurately reflect the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (citing Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). An ALJ does not err when she relies on a VE's testimony that is based on "personal experience, labor market surveys, and published statistical sources in determining the number of jobs available in the economy." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013) (summary order). Absent any "applicable regulation or decision . . . requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation," Galiotti v. Astrue, 266 F. App'x 66,

68 (2d Cir. 2008) (summary order), "it is enough that a vocational expert identif[y] the sources he generally consulted to determine such figures[.]"  Dugan v. Soc. Sec. Admin., Comm'r, 501 F. App'x 24, 25 (2d Cir. 2012) (summary order) (internal quotation marks and citations omitted).

### 1. Reliability

Plaintiff argues that the VE's testimony regarding the number of jobs in the national economy is unreliable because "the VE did not offer any source for translating the information in the Bureau of Labor Statistics to actual numbers of jobs from the DOT."  Dkt. No. 14 at 9-10.; see Dkt. No. 22 at 1-4.  Courts in this Circuit "have noted some concern" with such methodology.  Poole v. Saul, 462 F. Supp. 3d 137, 164 (D. Conn. 2020) (citing Debiase v. Saul, No. 3:19-CV-68 (RMS), 2019 WL 5485269, at *11 (D. Conn. Oct. 25, 2019) ("[T]he Court is sensitive to the plaintiff's concern about the vague nature of [the VE]'s testimony regarding his methodology in arriving at the job incidence numbers for the positions he identified[.]"), and Cortes v. Berryhill, No. 3:16-CV-01910 (JCH), 2018 WL 1392903, at *11 (D. Conn. Mar. 19, 2018) ("By exposing the vocational expert's flawed calculations, [the plaintiff] has illustrated the dubious methodology used to arrive at the number of jobs in the economy.")); see, e.g., Pronti v. Barnhart, 339 F. Supp. 2d 480, 491 (W.D.N.Y. 2004) (remanding where the VE's testimony regarding his methodology was "confusing and ambiguous").  "Nevertheless, the majority of those courts have declined to find error at step five because '[t]o date, the Second Circuit does not require a detailed scrutiny of a vocational expert's methods.'"  Poole, 462 F. Supp. 3d at 164 (quoting Debiase, 2019 WL 5485269, at *11, and citing Cortes, 2018 WL 1392903, at *11 ("[T]he vocational expert need not provide

the exact number of jobs available for a position.")).  Moreover, the Supreme Court has

held that a VE's testimony may constitute substantial evidence, even when the VE does

not disclose his or her supporting data underlying his or her conclusion.  See Biestek,

139 S. Ct. at 1157.

Here, the VE's testimony clears the relatively low substantial evidence bar.  See

discussion supra Subsection II.A; see also John C. v. Kijakazi, No. 3:22-CV-1073

(SVN), 2023 WL 6210994, at *10 (D. Conn. Sept. 25, 2023) ("The ALJ's reliance on the

DOT and the expert's professional experience provide the markers of reliability that

meet the low threshold for substantial evidence.") (citations omitted).  The VE testified

that his data and figures were derived "from the United States Bureau of Labor

Statistics."[8]  T. at 1061.  "[T]he Bureau of Labor Statistics has been acknowledged as a

reliable source[.]"  Stonick v. Saul, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *19

(D. Conn. Oct. 19, 2020) (citing Poole, 462 F. Supp. 3d at 164-65).  This Court has

previously accepted similar testimony, where "the vocational expert relied [solely] upon

Bureau of Labor Statistics" "when citing the number of positions available in [the

national economy]."  Shenk v. Astrue, No. 08-CV-152 (LEK/VEB), 2011 WL 7053623, at

*12 (N.D.N.Y. Dec. 1, 2011), report and recommendation adopted sub nom. Shenk v.

Comm'r of Soc. Sec., 2012 WL 140430 (N.D.N.Y. Jan. 18, 2012); see Pitcher v. Astrue,

No. 3:05-CV-0672 (LEK/GHL), 2008 WL 619175, at *7 (N.D.N.Y. Mar. 3, 2008)

("[Although] there is no one-to-one relationship between the occupations described in

---

[8] The United States Department of Labor "collects national data on job numbers" and publishes such data
in the Bureau of Labor Statistics.  Cassandra S. v. Kijakazi, No. 3:22-CV-328 (MPS/RMS), 2023 WL
2867068, at *19 (D. Conn. Jan. 30, 2023); see, e.g., U.S. BUREAU OF LABOR STATISTICS, Overview of BLS
Statistics by Occupation, https://www.bls.gov/bls/occupation.htm (last visited Feb. 20, 2024) ("BLS
conducts an annual mail survey of establishments that provides data on employment and wages by
occupation and industry for over 800 occupations and for about 400 industries throughout the Nation, and
similar data for all states and selected metropolitan areas.").

the [DOT] and the Bureau of Labor Statistics numbers for such jobs[, it was proper for the ALJ] to rely on the [VE's] testimony [that was based on] the DOT and Bureau of Labor Statistics numbers.").

The VE additionally testified that the job incidence numbers comported with his experience regarding the number of jobs available in the marketplace.  See T. at 1060-61; see also Jones-Reid, 934 F. Supp. 2d at 407 (concluding that the ALJ did not err in relying upon VE testimony based on "reliable statistical sources as well personal knowledge and experience"); cf. Galiotti, 266 F. App'x at 68 (explaining that a VE need not "identify with greater specificity the source of his figures or to provide supporting documentation" as long as he "identified the sources he generally consulted to determine such figures").  Similarly, the ALJ noted in her decision that the VE's testimony "not specifically addressed in the [DOT] is based on [the VE's] education, training, and professional experience in the field."  T. at 981.

In Tammy L., "the VE did not identify any source that he consulted to establish the job incidence numbers to which he testified."  Tammy L. v. Kijakazi, No. 3:21-CV-01026 (KAD), 2022 WL 2952626, at *4 (D. Conn. July 26, 2022) (emphasis added).  Further, he did not "testify, directly or by inference, that his testimony was based on any personal experience or history of testifying specifically on job incidence data."  Id.  The ALJ did "not explain his decision to credit the VE's testimony," leaving a "gaping hole in the support for [the ALJ's] decision."  Id. at *5.  "[A]bsent any identifiable source of the expert's opinion and absent any identifiable basis upon which the ALJ credited the opinion, the Court determine[d] that there was not substantial evidence to support the ALJ's Step Five conclusions."  Id. at *6.  This case is plainly distinguishable from

Tammy L.  See id. at *4-6.

Contrary to some of plaintiff's contentions, see Dkt. No. 22 at 3-4, "[a]n identification of the general sources and consideration of the experience and expertise of the vocational expert suffices; the ALJ need not inquire into the vocational expert's precise methodology."  Debiase, 2019 WL 5485269, at *11 (citing Bradley v. Berryhill, No. 3:16-CV-1478 (JAM), 2017 WL 3314000, at *3-4 (D. Conn. Aug. 3, 2017) (holding that the ALJ "gave the [VE's] testimony the scrutiny that the law requires[ ]" by asking what sources were relied on, and considering the VE's expertise)).  The VE was "not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally."  McIntyre, 758 F.3d at 152 (citing Brault, 683 F.3d at 450).  "The VE submitted his credentials, identified the sources he used to arrive at his conclusions, and [ ] explained his methodology. . . . The Court therefore [concludes] that the ALJ reasonably relied on the VE's expertise."  Harper v. Berryhill, No. 3:16-CV-01168 (SALM), 2017 WL 3085806, at *16 (D. Conn. July 20, 2017); see Crespo v. Comm'r of Soc. Sec., No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *9 (D. Conn. Sept. 25, 2019) ("[T]he substantial evidence standard does not foreclose an ALJ from relying on the expertise of a vocational expert and to do so without requiring the expert to lay a further foundation about the sources that the expert has consulted in order to arrive at the expert's job-number information."); see also Biestek, 139 S. Ct. at 1152-57 (recognizing that the VE had years of professional training and experience, explained her underlying methodology, and answered questions posed by the ALJ and the plaintiff's attorney at the hearing, the Court

determined that the expert's testimony constituted substantial evidence, even in the absence of the underlying data).

Additionally, as defendant argues, plaintiff's counsel declined to take full advantage of the opportunity to cross-examine the VE at the hearing about how he calculated his job incidence numbers.[9]  See T. at 1061-62; see also Dkt. No. 21 at 10; Brault, 683 F.3d at 451 (explaining that the plaintiff's "attorney had a full opportunity to explain his objections [to the VE's testimony] in significant detail [and n]othing more was required.").  "[S]everal district courts in this Circuit have held that '[t]he failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal.'"  Pierce v. Astrue, 946 F. Supp. 2d 296, 306 (W.D.N.Y. 2013) (quoting Carvey v. Astrue, No. 06-CV-0737 (NAM/DEP), 2009 WL 3199215, at *15 (N.D.N.Y. Sept. 30, 2009)); see Dkt. No. 21 at 9-10.  However, because "the Second Circuit has not yet ruled on this precise issue," Pierce, 946 F. Supp. 2d at 306, "[t]he Court is [ ] reluctant to base its ruling in this matter solely on a finding of waiver."[10]  Lewis v. Berryhill, No. 3:16-CV-01091 (SALM), 2018 WL 1377303, at *6 (D. Conn. Mar. 19, 2018); see Mark E. v. Kijakazi, No. 8:20-CV-425 (FJS), 2021 WL 4168590, at *9 (N.D.N.Y. Sept. 14, 2021) ("The Second Circuit has not addressed the issue of whether a plaintiff must raise an argument to an ALJ in order to raise it on appeal.").  In any event, as set forth above, the ALJ did not err

---

[9] "Plaintiff's [counsel] asked [the VE] where he obtained the jobs numbers he provided [and the VE] testified that they were from the Bureau of Labor Statistics[.]"  Dkt. No. 21 at 5; see T. at 1061.  Plaintiff's counsel did not ask any follow-up questions regarding the VE's methodology in reaching the job incidence numbers.  See T. at 1061-62.

[10] The undersigned specifically notes that, although plaintiff argues that "the VE in this case skirted the questioning of [p]laintiff's counsel" on cross-examination, plaintiff did not raise any such objections nor express any dissatisfaction with the VE's testimony during the hearing.  Dkt. No. 22 at 3; see Harvey v. Astrue, No. 5:05-CV-1094 (NAM), 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (noting that, "absent an objection, the ALJ is entitled to rely on the vocational expert") (citing Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002)).

by relying on the VE's testimony.  See Vandermark v. Colvin, No. 3:13-CV-1467 (GLS/ESH), 2015 WL 1097391, at *17 (N.D.N.Y. Mar. 11, 2015) (concluding that, "[w]hile his adjustments were not made through application of formal theory or use of mechanical or technological aids, [the VE]'s panoptic experience permitted him to form a reliable opinion based on judgment, instinct and effort[,]" and, therefore, held that the ALJ's step-five determination was supported by substantial evidence).

## 2. Accuracy

Plaintiff also argues, based on counsel's own research, that the numbers that the VE offered are inaccurate.  See Dkt. No. 14 at 9.  Plaintiff notes that, according to SkillTRAN's Job Browser Pro,[11] there are "only 1,076" Printed Circuit Board Screener jobs in the national economy, and "only 26" Final Assembler jobs in the national economy.  Id.  (citing McFarland v. Comm'r of Soc. Sec., No. 1:16-CV-308, 2017 WL 1165945, at *2 (N.D. Ohio Mar. 29, 2017) (noting that the VE testified that "the information in the Job Browser Pro and SkillTRAN was 'very reliable' and 'the best information that's available'")).

"Courts have . . . recognized that estimating the number of jobs in the national economy is not a precise science, such that a certain degree of variation is to be expected."  Glessing v. Comm'r of Soc. Sec., No. 19-CV-5704 (BMC), 2021 WL 1390640, at *12 (E.D.N.Y. Apr. 13, 2021), aff'd, No. 21-1192, 2022 WL 457243 (2d Cir.

---

[11] According to the SkillTRAN website, "Job Browser Pro" is a software tool for "disability management and legal professionals in many settings, including . . . expert testimony [and] disability claims management[.]"  See JOB BROWSER PRO BY SKILLTRAN, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited Feb. 20, 2024).  "In Malone v. Astrue, . . . SkillTRAN was described as having a methodology for reducing Occupational Employment Statistics ('OES') numbers based on frequency of DOT codes underneath the OES numbers by how they typically exist in the population using census numbers."  Vandermark, 2015 WL 1097391, at *10 n.22 (citing Malone v. Astrue, No. 3:10-CV-01137, 2011 WL 5879436, at *3 (M.D. Tenn. Nov. 23, 2011), report and recommendation adopted, 2012 WL 1078932 (M.D. Tenn. Mar. 30, 2012)).

Feb. 15, 2022) (citing <u>Poole</u>, 462 F. Supp. 3d at 165).  "The Court's own review of publicly available court decisions reveals that ALJs have adopted a wide variety of job numbers for the occupations at issue here."  <u>Poole</u>, 462 F. Supp. 3d at 165.  As to the job of Printed Circuit Board Screener (DOT # 726.684-110), this Court has reviewed recent decisions reporting national job incidence numbers for the printed circuit board screener position ranging between 5,000 and 557,510, with several reporting numbers similar to that testified to by the VE here.  <u>See, e.g.</u>, <u>Finn v. Comm'r of Soc. Sec.</u>, No. 21-CV-5457 (SLC), 2022 WL 4245196, at *3 (S.D.N.Y. Sept. 15, 2022) (557,510); <u>Vandermark</u>, 2015 WL 1097391, at *9 (110,000); <u>Smith v. Kijakazi</u>, No. 1:21-CV-00312 (JLT/BAM), 2023 WL 4493589, at *5 (E.D. Cal. July 12, 2023) (10,000); <u>Byrd v. Kijakazi</u>, No. 5:22-CV-336 (KDW), 2023 WL 3017958, at *5 (D.S.C. Apr. 20, 2023) (50,000); <u>Beyes v. Kijakazi</u>, No. 4:22-CV-614 (SRW), 2023 WL 1765185, at *3 (E.D. Mo. Feb. 3, 2023) (5,000); <u>Coe v. Kijakazi</u>, No. 5:22-CV-226 (KDW), 2023 WL 554119, at *3 (D.S.C. Jan. 27, 2023) (13,000); <u>Shawna A. J. v. Kijakazi</u>, No. 21-CV-198 (CDL), 2022 WL 4595061, at *3 (N.D. Okla. Sept. 30, 2022) (24,000); <u>S.P. v. Comm'r of Soc. Sec.</u>, No. 21-CV-4325 (RBK), 2022 WL 3500406, at *5 (D.N.J. Aug. 18, 2022) (9,500); <u>Black v. Kijakazi</u>, No. 1:21-CV-322 (KDB), 2022 WL 2977340, at *2 (W.D.N.C. July 27, 2022) (8,000 to 10,000); <u>Lee Jones v. Comm'r of Soc. Sec.</u>, No. 1:20-CV-01488 (EPG), 2022 WL 1597802, at *7 (E.D. Cal. May 19, 2022) (33,000); <u>White v. Kijakazi</u>, No. 21-CV-2151 (KHV), 2022 WL 1120517, at *5 (D. Kan. Apr. 14, 2022) (68,000); <u>Shepherd v. Comm'r of Soc. Sec.</u>, No. 2:20-CV-6576, 2021 WL 5451007, at *8 (S.D. Ohio Nov. 22, 2021) (11,000); <u>Trexter L. v. Kijakazi</u>, No. 1:20-CV-3364 (JD/SVH), 2021 WL 6061667, at *10 (D.S.C. Aug. 26, 2021) (12,000).

Likewise, as to the job of Final Assembler (DOT # 713.687-018), this Court reviewed recent decisions reporting national job incidence numbers ranging from 7,800 to 219,000.  See, e.g., Giron v. Kijakazi, No. 7:22-CV-06226 (VR), 2023 WL 6121764, at *5 (S.D.N.Y. Sept. 19, 2023) (16,000); Vilma Seranno S. v. Kijakazi, No. 3:22-CV-00214 (KAD), 2023 WL 2743283, at *2 n.3 (D. Conn. Mar. 31, 2023) (10,172); Britney S. v. Kijakazi, No. 1:23-CV-10334, 2024 WL 388090, at *8 (E.D. Mich. Feb. 1, 2024) (21,000); Kent v. O'Malley, No. 22-CV-1523, 2024 WL 308671, at *2 (E.D. Wis. Jan. 26, 2024) (88,000); Danijela P. v. Comm'r of Soc. Sec., No. 23-CV-10432, 2023 WL 8374389, at *11 (E.D. Mich. Dec. 4, 2023) (200,000); Byrd, 2023 WL 3017958, at *5 (50,000); Akram v. Acting Comm'r of Soc. Sec. Admin., No. 8:21-CV-1948 (MCR), 2023 WL 2237869, at *6 (M.D. Fla. Feb. 27, 2023) (17,000); H. v. O'Malley, No. 4:23-CV-28, 2023 WL 9425546, at *3 (E.D. Va. Jan. 5, 2023) (7,800); White, 2022 WL 1120517, at *6 (12,000); Perez v. Comm'r of Soc. Sec., No. 1:20-CV-08751 (NLH), 2022 WL 102246, at *4 (D.N.J. Jan. 11, 2022) (219,000).  The job incidence numbers that the VE identified for "Final Assembler" (14,000), and that the ALJ relied on, are well within this range.  Thus, the undersigned discerns no basis to conclude that the VE provided, and the ALJ adopted, an inaccurate number of jobs in the national economy that plaintiff can perform.  "Accordingly, the Court declines to find that [p]laintiff's independent online research serves to undermine the VE's testimony" as to job incidence numbers. Stonick, 2020 WL 6129339, at *20.

In sum, the VE's testimony constitutes substantial evidence in support of the ALJ's step-five determination.  "[P]laintiff has not shown that the record evidence precludes a reasonable mind from finding that [she] could perform a substantial number

of jobs that exist in the national economy." Marrero v. Kijakazi, No. 20-CV-3872 (PED), 2021 WL 4198221, at *7 (S.D.N.Y. Sept. 15, 2021). It is, therefore, recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

### V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that plaintiff's motion (Dkt. No. 14) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.

Date:   February 22, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge